ORIGINAL



JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

GREGG PARIS YATES #8225
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
E-Mail: Gregg.Yates@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 09 2021

at 3 o'clock and 00 min. P M
MICHELLE RYNNE, CLERK

SARAH A. KIEWLICZ
VALERIE G. PREISS
Trial Attorneys, Tax Division
U.S. Department of Justice
150 M Street N.E.
Washington, D.C. 20002
Telephone: (202) 514-5762
E-mail: Sarah.Kiewlicz@usdoj.gov
        Valerie.G.Preiss@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 21-00014 JMS |
| Plaintiff, | FIRST SUPERSEDING INDICTMENT |
| vs. | [18 U.S.C. §§ 1957, 371, 152(2); 26 U.S.C. §§ 7206(1), 7206(2)] |
| ROSEMARIE LASTIMADO-DRADI, (1) MARCIAMINAJUANEQUITA DUMLAO, (2) aka "Marcia Dumlao," | |

ELVAH MIRANDA,                    (3)  )
DANIEL MIRANDA,                   (4)  )
LAZERRICK LAWRENCE,               (5)  )
    aka "Muddathir Muhammad," and      )
DANITTA ROSS MORTON,              (6)  )
    aka "Danitta Ross,"                )
                           )
         Defendants.               )
_____  )

## FIRST SUPERSEDING INDICTMENT

The Grand Jury charges:

### Introductory Allegations

At times relevant to this Indictment:

    1.    ROSEMARIE LASTIMADO-DRADI (DRADI), the defendant, resided in the District of Hawaii.

    2.    DRADI was a manager and owner of Gimmel Group, LLC (Gimmel Group), a Hawaii limited liability company.

    3.    Cohaneim & Melek Legacy Trust (CMLT) was a purported trust created and used by DRADI in the District of Hawaii.

    4.    DRADI was a signatory on and exercised control over bank accounts held in her name, the name of Gimmel Group, and the name of CMLT at Bank of Hawaii, located in the District of Hawaii.

5.      DRADI was a signatory on and exercised control over bank accounts held in the name of CMLT at American Savings Bank, located in the District of Hawaii.

6.      MARCIAMINAJUANEQUITA DUMLAO, aka Marcia Dumlao, (DUMLAO), the defendant, resided in the District of Hawaii.

7.      MMG Legacy Trust (MMG) was a purported trust created and used by DUMLAO in the District of Hawaii.

8.      DUMLAO was a signatory on and exercised control over bank accounts held in her name and in the name of MMG at Bank of Hawaii, located in the District of Hawaii.

9.      ELVAH MIRANDA (E. MIRANDA), the defendant, resided in the District of Hawaii.

10.     Harvest Trust was a purported trust created and used by E. MIRANDA in the District of Hawaii.

11.     E. MIRANDA was a signatory on and exercised control over bank accounts held jointly by E. MIRANDA and her spouse, and held in the name of Harvest Trust at Bank of Hawaii, located in the District of Hawaii.

12.     E. MIRANDA was a signatory on and exercised control over bank accounts held in the name of Harvest Trust at American Savings Bank, located in the District of Hawaii.

13.    DANIEL MIRANDA (D. MIRANDA), the defendant, resided in the District of Hawaii.

14.    Defendants E. MIRANDA and D. MIRANDA were married.

15.    D. MIRANDA was a signatory on and exercised control over bank accounts held jointly with E. MIRANDA at Bank of Hawaii, located in the District of Hawaii.

16.    LAZERRICK LAWRENCE, aka Muddathir Muhammad, (LAWRENCE), the defendant, resided in the Northern District of Georgia.

17.    LAWRENCE was a signatory on and exercised control over bank accounts held in his name at Regions Bank, located in the Northern District of Georgia.

18.    DANITTA ROSS MORTON, aka Danitta Ross, (MORTON), the defendant, resided in the Northern District of Georgia.

19.    LAWRENCE and DRADI were members of Nuwaii Holdings LLC, aka Nuwaii International Holdings LLC, (Nuwaii), a Florida limited liability company.

20.    MORTON and LAWRENCE were organizers of M & M Marketing Company LLC (M&M), a Georgia limited liability company.

21.     LAWRENCE was the agent of Nu Alliance Company LLC (Nu Alliance), an Illinois limited liability company. LAWRENCE and MORTON also registered Nu Alliance as a Hawaii foreign limited liability company.

22.     Mortgage Compliance Advisors & Solutions (MCA&S) was a limited liability company registered in the state of Florida, that was controlled by a member of the conspiracy, who is not named in this Indictment.

23.     The Internal Revenue Service (IRS) was an agency of the United States Department of the Treasury responsible for enforcing and administering federal tax laws.

The Mail Fraud Scheme

24.     From at least in or about January 2015, through at least in or about March 2016, DRADI, DUMLAO, and E. MIRANDA, the defendants, with others known and unknown to the grand jury, knowingly devised, and intended to devise, a scheme and artifice to defraud the United States and to obtain money and property from the United States, through materially false and fraudulent pretenses, representations, and promises, by, among other things, scheming to obtain fraudulent tax refunds by filing false U.S. Individual Income Tax Returns and amended returns, Forms 1040 and 1040X, with attached Forms 1099-MISC, with the IRS.

25.     For the purpose of executing the scheme and artifice to defraud,

DRADI, DUMLAO, and E. MIRANDA, on or about the dates set forth in the chart

below, caused and used the United States Postal Service and private and

commercial interstate carriers, to send, among other things, the following items:

| Date of Mailing | Item Mailed |
| --- | --- |
| 10/17/15 | U.S. Individual Income Tax Return, Form 1040, with attached Form 1099-MISC |
| 11/24/15 | U.S. Individual Income Tax Return, Form 1040X, with attached Form 1099-MISC |
| 2/12/16 | U.S. Treasury Check, in the amount of $731,128.87 |
| 2/22/16 | U.S. Treasury Check, in the amount of $336,787.52 |

Counts 1-15
Money Laundering
(18 U.S.C. § 1957)

26.     The Introductory Allegations in paragraphs 1-12, 23, and the Mail

Fraud Scheme in paragraphs 24 and 25 are realleged and incorporated by reference

as though fully set forth herein.

27.     On or about the dates set forth in the chart below, within the District

of Hawaii and elsewhere, DRADI, the defendant, knowingly engaged and

attempted to engage in monetary transactions within the United States, by, through,

and to a financial institution, affecting interstate and foreign commerce, knowing

that each such transaction involved criminally derived property with a value

greater than $10,000, that is, the transfer, withdrawal, and deposit of funds and

monetary instruments described and in the amounts set forth in the chart below,

6

which were derived from a specified unlawful activity, namely, the proceeds of the

Mail Fraud Scheme, in violation of Title 18, United States Code, Section 1341,

with each such monetary transaction constituting a separate count of this

Indictment:

| Count | Date | Amount | Description |
|-------|------|--------|-------------|
| 1 | 2/29/16 | $114,119.33 | Transfer via check from Gimmel Group Bank of Hawaii account ending in -1649, payable to D&X F.T. |
| 2 | 3/1/16 | $18,300 | Transfer via check from Gimmel Group Bank of Hawaii account ending in -1649, payable to B.I. JMI |
| 3 | 3/11/16 | $100,000 | Internal bank transfer from Gimmel Group Bank of Hawaii account ending in -1649, to CMLT Bank of Hawaii account ending -1480 |
| 4 | 3/15/16 | $51,445.96 | Transfer via cashier's check from CMLT Bank of Hawaii account ending in -1480, payable to D&X F.T. |
| 5 | 3/15/16 | $16,000 | Transfer via cashier's check from CMLT Bank of Hawaii account ending in -1480, payable to D&X F.T. |
| 6 | 5/25/16 | $57,018.38 | Transfer via cashier's check from CMLT Bank of Hawaii account ending in -1480, payable to D&X F.T. |
| 7 | 6/3/16 | $15,000 | Internal bank transfer from CMLT Bank of Hawaii account ending -1480, to DRADI's Bank of Hawaii account ending in -9651 |
| 8 | 6/6/16 | $300,000 | Transfer via cashier's check from CMLT Bank of Hawaii account ending in -1480, to CMLT |
| 9 | 8/18/16 | $49,785 | Transfer via cashier's check from CMLT American Savings Bank account ending in -2540, payable to L.F. |

| Count | Date | Amount | Description |
|-------|------|--------|-------------|
| 10 | 8/24/16 | $13,900 | Transfer via cashier's check from CMLT American Savings Bank account ending in -2540, payable to DRADI |
| 11 | 8/29/16 | $35,000 | Transfer via cashier's check from CMLT American Savings Bank account ending in -2540, payable to CMLT |
| 12 | 8/29/16 | $40,000 | Transfer via cashier's check from CMLT American Savings Bank account ending in -2540, payable to CMLT |
| 13 | 8/29/16 | $40,000 | Transfer via cashier's check from CMLT American Savings Bank account ending in -2540, payable to CMLT |
| 14 | 8/29/16 | $40,000 | Transfer via cashier's check from CMLT American Savings Bank account ending in -2540, payable to CMLT |
| 15 | 8/29/16 | $40,000 | Transfer via cashier's check from CMLT American Savings Bank account ending in -2540, payable to CMLT |

All in violation of Title 18, United States Code, Section 1957.

<u>Counts 16-20</u>
Money Laundering
(18 U.S.C. § 1957)

28.    The Introductory Allegations in paragraphs 1-12 and 23, and the Mail Fraud Scheme in paragraphs 24 and 25 are realleged and incorporated by reference as though fully set forth herein.

29.    On or about the dates set forth in the chart below, within the District of Hawaii and elsewhere, DUMLAO, the defendant, knowingly engaged and attempted to engage in monetary transactions within the United States, by, through, and to a financial institution, affecting interstate and foreign commerce, knowing

8

that each such transaction involved criminally derived property with a value

greater than $10,000, that is, the transfer, withdrawal, and deposit of funds and

monetary instruments described and in the amounts set forth in the chart below,

which were derived from a specified unlawful activity, namely, the proceeds of the

Mail Fraud Scheme in violation of Title 18, United States Code, Section 1341,

with each such monetary transaction constituting a separate count of this

Indictment:

| Count | Date | Amount | Description |
|---|---|---|---|
| 16 | 3/15/16 | $164,689.23 | Transfer via check from DUMLAO's Bank of Hawaii account ending in -4438, payable to CMLT |
| 17 | 4/22/16 | $20,000 | Internal bank transfer from DUMLAO's Bank of Hawaii account ending in -4438, to MMG Bank of Hawaii account ending -3546 |
| 18 | 4/25/16 | $140,000 | Internal bank transfer from DUMLAO's Bank of Hawaii account ending in -4438, to MMG Bank of Hawaii account ending in -3546 |
| 19 | 4/28/16 | $131,000 | Internal bank transfer from MMG Bank of Hawaii account ending in -3546, to CMLT Bank of Hawaii account ending in -1480 |
| 20 | 6/9/16 | $21,060 | Transfer via cashier's check from MMG Bank of Hawaii account ending in -3546, payable to L.B. |

All in violation of Title 18, United States Code, Section 1957.

//

//

//

//

Counts 21-36
Money Laundering
(18 U.S.C. § 1957)

30.    The Introductory Allegations in paragraphs 1-12 and 23, and the Mail

Fraud Scheme in paragraphs 24 and 25 are realleged and incorporated by reference

as though fully set forth herein.

31.    On or about the dates set forth in the chart below, within the District

of Hawaii and elsewhere, E. MIRANDA, the defendant, knowingly engaged and

attempted to engage in monetary transactions within the United States, by, through,

and to a financial institution, affecting interstate and foreign commerce, knowing

that each such transaction involved criminally derived property with a value

greater than $10,000, that is, the transfer, withdrawal, and deposit of funds and

monetary instruments described and in the amounts set forth in the chart below,

which were derived from a specified unlawful activity, namely, the proceeds of the

Mail Fraud Scheme in violation of Title 18, United States Code, Section 1341,

with each such monetary transaction constituting a separate count of this

Indictment:

| Count | Date | Amount | Description |
|-------|------|--------|-------------|
| 21 | 2/24/16 | $297,351.55 | Internal bank transfer from E. MIRANDA's joint Bank of Hawaii account ending in -5346, to E. MIRANDA's joint Bank of Hawaii account ending in -3721 |
| 22 | 2/24/16 | $15,000 | Internal bank transfer from E. MIRANDA's joint Bank of Hawaii account ending in -5346, |

10

| Count | Date | Amount | Description |
|---|---|---|---|
| | | | to E. MIRANDA's joint Bank of Hawaii account ending in -3721 |
| 23 | 2/24/16 | $14,681.87 | Transfer via cashier's check from E. MIRANDA's joint Bank of Hawaii account ending in -5346, payable to S.C.L. |
| 24 | 2/24/16 | $293,651.55 | Transfer via check from E. MIRANDA's joint Bank of Hawaii account ending in -3721, payable to Gimmel Group |
| 25 | 2/29/16 | $388,949.78 | Internal bank transfer from E. MIRANDA's joint Bank of Hawaii account ending in -5346, to E. MIRANDA's joint Bank of Hawaii account ending in -3721 |
| 26 | 3/8/16 | $13,165.60 | Transfer via check from E. MIRANDA's joint Bank of Hawaii account ending in -3721, payable to A.C.S. |
| 27 | 3/11/16 | $250,000 | Internal bank transfer from E. MIRANDA's joint Bank of Hawaii account ending in -3721, to Harvest Trust Bank of Hawaii account ending in -2270 |
| 28 | 4/4/16 | $19,518.33 | Transfer via check from Harvest Trust Bank of Hawaii account ending in -2270, payable to B.M.W. |
| 29 | 4/5/16 | $10,465.07 | Transfer via check from E. MIRANDA's joint Bank of Hawaii account ending in -3721, payable to J.D.L. A.C. |
| 30 | 4/11/16 | $22,202.59 | Transfer via check from Harvest Trust Bank of Hawaii account ending in -2270, payable to M.M.F.G. |
| 31 | 5/20/16 | $25,000 | Transfer via cashier's check from Harvest Trust Bank of Hawaii account ending in -2270, payable to B.M. |
| 32 | 5/20/16 | $25,000 | Transfer via cashier's check from Harvest Trust Bank of Hawaii account ending in -2270, payable to M.M. |
| 33 | 6/6/16 | $146,000 | Transfer via check from Harvest Trust Bank of Hawaii account ending in -2270, to Harvest Trust American Savings Bank account ending in -2506 |

| Count | Date | Amount | Description |
|-------|------|--------|-------------|
| 34 | 7/27/16 | $50,000 | Transfer via cashier's check from Harvest Trust American Savings Bank account ending in -2506, payable to M.M. |
| 35 | 7/27/16 | $50,000 | Transfer via cashier's check from Harvest Trust American Savings Bank account ending in -2506, payable to B.M. |
| 36 | 7/29/16 | $25,000 | Transfer via cashier's check from Harvest Trust American Savings Bank account ending in -2506, payable to M.M. |

All in violation of Title 18, United States Code, Section 1957.

Count 37
Conspiracy to Defraud the United States
(18 U.S.C. § 371)

32.    The Introductory Allegations contained in paragraphs 1 through 23 are realleged and incorporated by reference as though fully set forth herein.

The Conspiracy and Its Objects

33.    From at least in or around January 2015, and continuing through at least in or around September 2018, in the District of Hawaii and elsewhere, DRADI, DUMLAO, E. MIRANDA, D. MIRANDA, LAWRENCE, and MORTON, the defendants, did unlawfully, voluntarily, intentionally and knowingly, conspire, combine, confederate, and agree with each other and with others known and unknown to the grand jury to defraud the United States, by dishonest and deceitful means, by impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of revenue, namely, by filing with the IRS federal

income tax returns claiming fraudulent refunds based on false tax withholdings reported on Forms 1040, 1040X, and 1099-MISC and engaging in a course of conduct to prevent the IRS from recouping the fraudulently obtained tax refunds.

<u>Manner and Means</u>

34.   It was part of the conspiracy that, DRADI, DUMLAO, E. MIRANDA, D. MIRANDA, LAWRENCE, and MORTON and their co-conspirators, would and did the following, among other things:

> a.  Recruit and cause to be recruited participants to file fraudulent tax returns to fraudulently obtain tax refunds;
>
> b.  Generate and cause to be generated fraudulent IRS Forms 1099-MISC that purported to be issued by participants' mortgage lenders that falsely reported, among other things, large tax withholdings;
>
> c.  File and cause to be filed with the IRS false Forms 1099-MISC;
>
> d.  File and cause to be filed with the IRS Forms 1040 U.S. Individual Income Tax Return and Forms 1040X Amended U.S. Individual Income Tax Return, based on the false and fraudulent Forms 1099-MISC, that falsely and fraudulently claimed large tax refunds;
>
> e.  Cause to be provided to themselves and others, U.S. Treasury Checks obtained by filing tax returns claiming false and fraudulent tax refunds;

13

f.  Pay DRADI substantial fees for DRADI's services based, in part, on a percentage of the tax refunds received;

g.  Provide participants with false, fraudulent, and frivolous information concerning the mail fraud scheme, as set forth, *supra*, in paragraphs 24-25, and DRADI's involvement in it, that they instructed participants to provide to the IRS in response to IRS efforts to recover the fraudulently obtained tax refunds.

h.  Send false, fraudulent, and frivolous information concerning the mail fraud scheme to the IRS in response to IRS efforts to recover the fraudulently obtained tax refunds.

i.  Create purported trusts to conceal the fraudulently obtained tax refunds from IRS recovery efforts.

j.  Open bank accounts in the names of business entities and purported trusts to conceal the fraudulently obtained tax refunds from IRS recovery efforts.

k.  Transfer fraudulently obtained tax refund proceeds between bank accounts held in their names, purported trusts, and nominees to prevent the IRS from collecting the fraudulently obtained proceeds.

l.  File retaliatory liens against IRS employees attempting to recover the fraudulently obtained tax refunds.

m. File bankruptcy claims to prevent the IRS from collecting the fraudulently obtained proceeds.

<u>Overt Acts</u>

35.     In furtherance of the conspiracy and to affect the objects thereof, DRADI, DUMLAO, E. MIRANDA, D. MIRANDA, LAWRENCE, and MORTON, and their co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Hawaii and elsewhere:

<u>DRADI Overt Acts</u>

a.  On or about April 29, 2015, DRADI created and caused to be created the limited liability company, Gimmel Group.

b.  On or about May 18, 2015, DRADI opened and caused to be opened a bank account ending in -6584 in the name of Gimmel Group at Bank of Hawaii.

c.  On or about September 17, 2015, DRADI paid MCA&S $2,500 on behalf of E. MIRANDA.

d.  On or about November 16, 2015, DRADI opened and caused to be opened a bank account ending in -1649 in the name of Gimmel Group at Bank of Hawaii.

15

e.  On or about December 3, 2015, DRADI paid MCA&S $2,500 on behalf of MORTON.

f.  On or about February 12, 2016, DRADI paid MCA&S fees relating to the creation of trusts for DRADI, E. MIRANDA, and D. MIRANDA.

g.  On or about March 11, 2016, DRADI created and caused to be created the purported trust, CMLT.

h.  On or about March 11, 2016, DRADI opened and caused to be opened a bank account ending in -1480 in the name of CMLT at Bank of Hawaii.

i.  On or about June 5, 2016, DRADI opened and caused to be opened a bank account ending in -2540 in the name of CMLT at American Savings Bank.

<u>DUMLAO Overt Acts</u>

j.  In or around July 2015, DUMLAO paid DRADI fees in exchange for the preparation of DUMLAO's false and fraudulent Forms 1040 and 1099-MISC.

k.  On or about October 17, 2015, DUMLAO filed and caused to be filed with the IRS a false and fraudulent U.S. Individual Income Tax Return, Form 1040, for the 2014 tax year, in her own name,

16

fraudulently asserting a claim for a refund in the amount of $340,000. Attached to the Form 1040, DUMLAO filed and caused to be filed with the IRS a false and fraudulent IRS Form 1099-MISC, for tax year 2014, purportedly from a mortgage lender, which form reported a false tax withholding amount of $798,492.08 for DUMLAO.

l.  On or about March 4, 2016, DUMLAO deposited and caused to be deposited a fraudulently obtained U.S. Treasury Check in the amount of $336,787.52, payable to DUMLAO, into her account ending in -4438 at Bank of Hawaii.

m. On or about March 8, 2016, DUMLAO paid DRADI $164,689.23, from the account ending in -4438 at Bank of Hawaii, for assisting in the false tax filings and concealment of the fraudulently obtained refund.

n.  On or about April 12, 2016, DUMLAO created and caused to be created the purported trust, MMG.

o.  On or about April 22, 2016, DUMLAO opened and caused to be opened a bank account ending in -3546 in the name of MMG at Bank of Hawaii.

p.  On or about April 22, 2016, DUMLAO transferred and caused to be transferred $20,000 from the Bank of Hawaii account ending in -4438 to the MMG account ending in -3546 at Bank of Hawaii.

q.  On or about April 25, 2016, DUMLAO transferred and caused to be transferred $140,000 from the Bank of Hawaii account ending in -4438 to the MMG account ending in -3546 at Bank of Hawaii.

r.  On or about April 28, 2016, DUMLAO transferred and caused to be transferred $131,000 from the MMG account ending in -3546 at Bank of Hawaii, to the CMLT account ending in -1480 at Bank of Hawaii.

s.  On or about June 9, 2016, DUMLAO transferred and caused to be transferred $21,060 from the MMG Bank of Hawaii account ending in -3546, to L.B. via cashier's check.

t.  On or about April 11, 2018, DUMLAO filed a voluntary bankruptcy petition, *In re: Marciaminajuanequita Rasay Tuvera Dumlao*, Case No. 18-00391 (D. Haw.), in the United States Bankruptcy Court in the District of Hawaii.

u.  On or about August 2, 2018, DUMLAO made false and misleading statements under oath during a meeting of creditors in relation to her bankruptcy proceeding. DUMLAO stated that she did not pay

18

DRADI or any other entities a portion of her tax refund and that she prepared her false and fraudulent tax return on her own.

v. From on or about July 10, 2018, to on or about September 11, 2018, DUMLAO mailed and faxed at least five false, fraudulent, and frivolous letters to the IRS in response to IRS efforts to recover the fraudulently obtained tax refund.

### E. MIRANDA and D. MIRANDA Overt Acts

w. From in or around August 2015, to in or around October 2015, E. MIRANDA and D. MIRANDA paid DRADI fees in exchange for the preparation of E. MIRANDA's and D. MIRANDA's false and fraudulent Forms 1040X and 1099-MISC.

x. On or about November 24, 2015, E. MIRANDA and D. MIRANDA filed and caused to be filed with the IRS a false and fraudulent Amended U.S. Individual Income Tax Return, Form 1040X, for the tax year 2014, in their own names, fraudulently asserting a claim for a refund totaling $713,621. Attached to the Form 1040X, E. MIRANDA and D. MIRANDA filed and caused to be filed with the IRS a false and fraudulent IRS Form 1099-MISC, for tax year 2014, purportedly from a mortgage lender,

which form reported a false tax withholding amount of
$1,091,590.60 for D. MIRANDA.

y.  On or about November 18, 2015, E. MIRANDA and
D. MIRANDA opened and caused to be opened a joint checking
account ending in -3721, in their names at Bank of Hawaii.

z.  On or about February 17, 2016, E. MIRANDA and D. MIRANDA
opened and caused to be opened a joint savings bank account
ending in -5346, in their names at Bank of Hawaii.

aa. On or about February 17, 2016, E. MIRANDA and D. MIRANDA
deposited and caused to be deposited a fraudulently obtained U.S.
Treasury Check in the amount of $731,128.87, payable to E.
MIRANDA and D. MIRANDA, into their joint account ending in -
5346 at Bank of Hawaii.

bb. On or about February 24, 2016, E. MIRANDA transferred and
caused to be transferred $297,351.55 from the joint savings
account ending in -5346 at Bank of Hawaii, to the joint checking
account ending in -3721 at Bank of Hawaii.

cc. On or about February 24, 2016, E. MIRANDA transferred and
caused to be transferred $15,000 from the joint savings account

ending in -5346 at Bank of Hawaii, to the joint checking account ending in -3721 at Bank of Hawaii.

dd. On or about February 24, 2016, E. MIRANDA and D. MIRANDA paid DRADI $293,651.55, from their joint Bank of Hawaii account ending in -3721, for assisting in the false tax filings and concealment of the fraudulently obtained refund.

ee. On or about February 24, 2016, E. MIRANDA and D. MIRANDA paid DRADI $3,700, from their joint Bank of Hawaii account ending in -3721, for the preparation of the trust documents.

ff. On or about February 29, 2016, DRADI emailed E. MIRANDA copies of her Harvest Trust package. In the email DRADI instructed E. MIRANDA to keep it private and to open a non-interest-bearing checking account after March 1, 2016.

gg. On or about February 29, 2016, E. MIRANDA transferred and caused to be transferred $388,949.78 from the joint savings account ending in -5346 at Bank of Hawaii, to the joint checking account ending in -3721 at Bank of Hawaii.

hh. On or about March 9, 2016, E. MIRANDA created and caused to be created the purported trust, Harvest Trust.

ii. On or about March 11, 2016, E. MIRANDA opened and caused to be opened a bank account ending in -2270 in the name of Harvest Trust at Bank of Hawaii.

jj. On or about March 11, 2016, E. MIRANDA transferred and caused to be transferred $250,000, from her joint account ending in -3721 at Bank of Hawaii, to the Harvest Trust account ending in -2270 at Bank of Hawaii.

kk. On or about May 20, 2016, E. MIRANDA transferred and caused to be transferred $25,000 from the Harvest Trust account ending in -2270 at Bank of Hawaii, via cashier's check payable to B.M.

ll. On or about May 20, 2016, E. MIRANDA transferred and caused to be transferred $25,000 from the Harvest Trust account ending in -2270 at Bank of Hawaii, via cashier's check payable to M.M.

mm. On or about June 4, 2016, E. MIRANDA opened and caused to be opened a bank account ending in -2506 in the name of Harvest Trust at American Savings Bank.

nn. On or about June 6, 2016, E. MIRANDA transferred and caused to be transferred $146,000 from the Harvest Trust account ending in -2270 at Bank of Hawaii, to the Harvest Trust account ending in -2506 at American Savings Bank.

oo. On or about July 27, 2016, E. MIRANDA transferred and caused to be transferred $50,000 from the Harvest Trust bank account ending in -2506 at American Savings Bank, to M.M. via cashier's check.

pp. On or about July 27, 2016, E. MIRANDA transferred and caused to be transferred $50,000 from the Harvest Trust bank account ending in -2506 at American Savings Bank, to B.M. via cashier's check.

qq. On or about July 29, 2016, E. MIRANDA transferred and caused to be transferred $25,000 from the Harvest Trust bank account ending in -2506 at American Savings Bank, to M.M. via cashier's check.

rr. On or about October 28, 2016, E. MIRANDA and D. MIRANDA mailed a letter containing false, fraudulent, and frivolous statements to an IRS employee, in which they falsely represented that they self-prepared their joint Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2014 and falsely represented their relationship with Gimmel Group.

ss. On or about January 25, 2018, D. MIRANDA and

E. MIRANDA paid LAWRENCE $25,000 via cashier's checks, for his assistance with D. MIRANDA's false bankruptcy proceeding.

tt.  On or about April 13, 2018, D. MIRANDA filed a voluntary bankruptcy petition, *In re: Daniel B. Miranda,* Case No. 18-00402 (D. Haw.), in the United States Bankruptcy Court in the District of Hawaii.

uu. On or about May 10, 2018, D. MIRANDA made false and misleading statements under oath during a meeting of creditors in relation to his bankruptcy proceeding. D. MIRANDA stated that he and E. MIRANDA prepared their 2014 joint tax return on their own and DRADI did not assist them with the return.

vv. From on or about May 21, 2018, to on or about August 2, 2018, E. MIRANDA and D. MIRANDA mailed at least two false, fraudulent, and frivolous letters to the IRS in response to IRS efforts to recover the fraudulently obtained tax refund.

<u>LAWRENCE Overt Acts</u>

ww.   On or about October 2, 2016, LAWRENCE filed a retaliatory lien on behalf of DUMLAO against an IRS employee assigned to recover the fraudulently obtained tax refund.

xx. On or about October 2, 2016, LAWRENCE filed a retaliatory lien on behalf of E. MIRANDA and D. MIRANDA against an IRS employee assigned to recover the fraudulently obtained tax refund.

yy. On or about February 17, 2017, LAWRENCE registered Nuwaii as a limited liability company in the state of Florida.

zz. On or about October 3, 2017, LAWRENCE registered Nu Alliance as a limited liability company in the state of Illinois.

aaa. On or about February 21, 2018, LAWRENCE registered M&M as a trade name for Nu Alliance in the state of Hawaii.

bbb. On or about March 27, 2018, LAWRENCE registered Nu Alliance as a foreign limited liability company in the state of Hawaii.

ccc. On or about April 8, 2018, LAWRENCE traveled to the District of Hawaii to conduct meetings with DUMLAO, E. MIRANDA, and D. MIRANDA.

<u>MORTON Overt Acts</u>

ddd. On or about February 8, 2018, MORTON traveled to the District of Hawaii to conduct meetings with DUMLAO, E. MIRANDA, and D. MIRANDA.

eee.   On June 6, 2018, MORTON registered M&M as a limited

liability company in the state of Georgia.

All in violation of Title 18, United States Code, Section 371.

Count 38
Making and Subscribing a False Return, Statement, or Other Document
(26 U.S.C. § 7206(1))

36.   The Introductory Allegations in paragraphs 1 through 8 are realleged
and incorporated by reference as though fully set forth herein.

37.   On or about October 12, 2015, in the District of Hawaii and
elsewhere, DUMLAO, the defendant, did willfully make and subscribe, and
willfully file and cause to be filed with the IRS, a false U.S. Individual Income Tax
Return, Form 1040, for calendar year 2014, which was verified by a written
declaration that it was made under the penalties of perjury and which DUMLAO
did not believe to be true and correct as to every material matter, in that the Form
1040 reported, at Line 21, that DUMLAO earned other income totaling
$1,383,492, reported, at Line 64, that DUMLAO had tax withholdings of
$798,662, and claimed, at Line 76a, that DUMLAO was owed a refund of
$340,000, whereas, as DUMLAO well knew, she did not earn the other income,
did not have the tax withholdings reported, and was not entitled to the refund
claimed on the tax return.

In violation of Title 26, United States Code, Section 7206(1).

26

<u>Count 39</u>
Making and Subscribing a False Return, Statement, or Other Document
(26 U.S.C. § 7206(1))

38.     The Introductory Allegations in paragraphs 1 through 5, and 9 through 15, are realleged and incorporated by reference as though fully set forth herein.

39.     On or about November 24, 2015, in the District of Hawaii and elsewhere, E. MIRANDA and D. MIRANDA, the defendants, did willfully make and subscribe, and willfully file and cause to be filed with the IRS, a false Amended U.S. Individual Income Tax Return, Form 1040X, for calendar year 2014, which was verified by a written declaration that it was made under the penalties of perjury and which E. MIRANDA and D. MIRANDA did not believe to be true and correct as to every material matter, in that the Form 1040X reported, at Line 1, that E. MIRANDA and D. MIRANDA earned other income totaling $1,091,590, reported, at Line 12, that E. MIRANDA and D. MIRANDA had tax withholdings of $1,091,590, and claimed, at Line 22, that E. MIRANDA and D. MIRANDA were owed a refund of $713,621, whereas, as E. MIRANDA and D. MIRANDA well knew, they did not earn the other income, did not have the tax withholdings reported, and were not entitled to the refund claimed on the tax return.

In violation of Title 26, United States Code, Section 7206(1).

27

Count 40
Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent
Tax Return
(26 U.S.C. § 7206(2))

40.    The Introductory Allegations in paragraphs 1 through 8 are realleged

and incorporated by reference as though fully set forth herein.

41.    On or about October 12, 2015, in the District of Hawaii and

elsewhere, DRADI, the defendant, willfully aided and assisted in, and procured,

counseled, and advised the preparation and presentation to the IRS of a U.S.

Individual Income Tax Return, Form 1040, for DUMLAO, for calendar year 2014,

which was false and fraudulent as to a material matter. That tax return reported, at

Line 21, that DUMLAO earned other income totaling $1,383,492, reported, at Line

64, that DUMLAO had tax withholdings of $798,662, and claimed, at Line 76a,

that DUMLAO was owed a refund of $340,000, whereas, as DRADI well knew,

DUMLAO did not earn the other income, did not have the tax withholdings

reported, and was not entitled to the refund claimed on the tax return.

In violation of Title 26, United States Code, Section 7206(2).

Count 41
Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent
Tax Return
(26 U.S.C. § 7206(2))

42.    The Introductory Allegations in paragraphs 1 through 5, and 9 through

15, are realleged and incorporated by reference as though fully set forth herein.

43.     On or about November 24, 2015, in the District of Hawaii and elsewhere, DRADI, the defendant, willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the IRS of an Amended U.S. Individual Income Tax Return, Form 1040X, for E. MIRANDA and D. MIRANDA, for calendar year 2014, which was false and fraudulent as to a material matter. That tax return reported, at Line 1, that E. MIRANDA and D. MIRANDA earned other income totaling $1,091,590, reported, at Line 12, that E. MIRANDA and D. MIRANDA had tax withholdings of $1,091,590, and claimed, at Line 22, that E. MIRANDA and D. MIRANDA were owed a refund of $713,621, whereas, as DRADI well knew, E. MIRANDA and D. MIRANDA did not earn the other income, did not have the tax withholdings reported, and were not entitled to the refund claimed on the tax return.

In violation of Title 26, United States Code, Section 7206(2).

### Count 42
### False Statement Under Oath
### (18 U.S.C. § 152(2))

44.     The Introductory Allegations in paragraphs 1 through 23 are realleged and incorporated by reference as though fully set forth herein.

45.     On or about August 2, 2018, in the District of Hawaii, DUMLAO, the defendant, in and in relation to a case under Title 11 of the United States Code (the Bankruptcy Code), namely *In re: Marciaminajuanequita Rasay Tuvera Dumlao*,

29

Case No. 18-00391 (D. Haw.), did knowingly and fraudulently make a false

material statement under oath before the bankruptcy trustee at a meeting of

creditors, when she gave the following sworn testimony:

> Q: So, my goal here is for you to identify all payments you made, all
> expenditures of the IRS tax monies, okay? So, you testified you paid Nu
> Alliance $2,000, you testified that you paid an online investment opportunity
> of $4,000 and then you, I asked you, what other people or entities did you pay
> this IRS tax refund money to and you responded a couple times "Nu Alliance"
> okay? Are there any other persons or entities that received this IRS tax refund
> money?
>
> A: <u>No.</u>

The aforesaid underscored testimony was false insofar as Defendant,

DUMLAO, knew that she had paid DRADI and other entities at least $164,689.23.

In violation of Title 18, United States Code, Section 152(2).

Count 43
False Statement Under Oath
(18 U.S.C. § 152(2))

46.     The Introductory Allegations in paragraphs 1 through 23 are realleged

and incorporated by reference as though fully set forth herein.

47.     On or about May 10, 2018, in the District of Hawaii, D. MIRANDA,

the defendant, in and in relation to a case under Title 11 of the United States Code

(the Bankruptcy Code), namely, *In re: Daniel B. Miranda*, Case No. 18-00402 (D.

Haw.), did knowingly and fraudulently make a false material statement under oath

before the bankruptcy trustee at a meeting of creditors, when he gave the following

sworn testimony:

Q. What did you do with the $700,000 that you received from the IRS?

A. We used them, uh, for paying bills.

Q. And what bills did you pay?

A. To pay off our cars. And uh, some other, uh, bills.

Q. What other bills?

A. Utilities.

Q. So, you would agree that $700,000 is quite a large sum of money. Would

you agree with that?

A. Yes.

Q. Okay, so how many cars are you saying you paid off?

A. Uh, two.

Q. Two, okay and then some utility bills.

A. Yes.

Q. Okay just by, just doing general math you would agree that that still

leaves quite a large sum leftover, correct?

A. <u>The leftovers the, the IRS took it back.</u>

Q. So the leftover the IRS took back?

A. <u>Yes.</u>

31

Q. And by what process did they take that back? How did they take that

back?

A. They, uh, they take out from our banks.

The aforesaid underscored testimony was false insofar as Defendant,

D. MIRANDA, knew that the IRS only seized approximately $83,000 and he

transferred the remaining money to co-conspirators and to his children.

In violation of Title 18, United States Code, Section 152(2).

### Count 44
### False Statement Under Oath
### (18 U.S.C. § 152(2))

48.    The Introductory Allegations in paragraphs 1 through 23 are realleged

and incorporated by reference as though fully set forth herein.

49.    On or about July 18, 2018, in the District of Hawaii, D. MIRANDA,

the defendant, in and in relation to a case under Title 11 of the United States Code

(the Bankruptcy Code), namely, *In re: Daniel B. Miranda*, Case No. 18-00402 (D.

Haw.), did knowingly and fraudulently make a false material statement under oath

before the bankruptcy trustee at a meeting of creditors, when he gave the following

sworn testimony:

> Q. I'll read it. "Within one year before you filed for bankruptcy, did you or
> anyone else acting on your behalf pay or transfer any property to anyone
> who promised to help you deal with your creditor or to make payments to
> your creditor?" And you checked "No."
> Is that true? Is that true?

A. <u>Nobody -- nobody promised us to do.</u>

Q. You didn't pay anybody --

A. <u>No.</u>

Q. -- and no one promised to help?

A. <u>No.</u>

The aforesaid underscored testimony was false insofar as Defendant,

D. MIRANDA, knew that within ninety days of filing for bankruptcy, he had paid

LAWRENCE $25,000 to help him with his creditors.

In violation of Title 18, United States Code, Section 152(2).

Count 45
False Statement Under Oath
(18 U.S.C. § 152(2))

50.    The Introductory Allegations in paragraphs 1 through 23 are realleged

and incorporated by reference as though fully set forth herein.

51.    On or about October 4, 2018, in the District of Hawaii,

E. MIRANDA, the defendant, in and in relation to a case under Title 11 of the

United States Code (the Bankruptcy Code), namely, *In re: Daniel B. Miranda*,

Case No. 18-00402 (D. Haw.), did knowingly and fraudulently make a false

material statement under oath during a Rule 2004 examination, when she gave the

following sworn testimony:

Q. You think the IRS levied more than a hundred thousand?

33

A. <u>Oh, yes.</u>

Q. More than 150,000?

A. <u>Plus my husband garnishment.</u>

Q. Was it more than 150,000?

A. <u>Practically more than that.</u>

The aforesaid underscored testimony was false insofar as Defendant,

E. MIRANDA, knew that the IRS only seized approximately $83,000.

In violation of Title 18, United States Code, Section 152(2).

## Forfeiture Notice

1.      The allegations contained in all paragraphs of Counts 1 through 36 of this Indictment are realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 982.

2.      The United States hereby gives notice to ROSEMARIE LASTIMADO-DRADI, MARCIAMINAJUANEQUITA DUMLAO, and ELVAH MIRANDA, the defendants, that, upon conviction of the offenses in violation of Title 18, United States Code, Section 1957, charged in Counts 1 through 36 of the Indictment, the government will seek forfeiture, pursuant to Title 18, United States Code, Section 982(a)(1), of any and all property, real or personal, involved in the offenses, and all property traceable to such property, including but not limited to a

34

sum of money equal to at least approximately $1,067,916.39 in United States

currency.

3.       If by any act or omission of the defendants ROSEMARIE

LASTIMADO-DRADI, MARCIAMINAJUANEQUITA DUMLAO, and ELVAH

MIRANDA, any of the property subject to forfeiture described in paragraph 2

herein:

   a.  cannot be located upon the exercise of due diligence;

   b.  has been transferred or sold to, or deposited with, a third party;

   c.  has been placed beyond the jurisdiction of the court;

   d.  has been substantially diminished in value; and

   e.  has been commingled with other property, which cannot be

       subdivided without difficulty;

the United States of America will be entitled to forfeiture of substitute property up

//

//

//

//

//

//

//

to the value of the property described in paragraph 2 herein, pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1).

DATED:   September 9, 2021, at Honolulu, Hawaii.

A TRUE BILL

/s/ Foreperson
FOREPERSON

JUDITH A. PHILIPS
Acting United States Attorney
District of Hawaii

SARAH A. KIEWLICZ
VALERIE G. PREISS
Trial Attorneys

GREGG PARIS YATES
Assistant United States Attorney


United States v. Rosemarie Lastimado-Dradi et al.
First Superseding Indictment
Cr. No. 21-00014 JMS

36